**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ALMETIS HAYNES** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:06CV791-HSO-JMR** |
| | § | |
| **NORTHROP GRUMMAN** | § | |
| **SHIPBUILDING, INC.** | § | **DEFENDANT** |

<u>**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary Judgment filed by Defendant Northrop Grumman Shipbuilding, Inc.[1] ["NGSB"] on October 15, 2010 [461]. To date, Plaintiff, Almetis Haynes ["Haynes"], has not tendered a Response.[2] After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that because Haynes is unable to maintain his claims as a matter of law, NGSB is entitled to summary judgment.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

A.    <u>Procedural History</u>

An initial Complaint [1] was filed in this Court on March 21, 2001, and a

_____

[1]Counsel for Defendant filed a Motion to Substitute Party on September 8, 2010. The Court granted said Motion as unopposed and Defendant's name in the style of the case was changed from "Northrop Grumman Ship Systems, Inc." to "Northrop Grumman Shipbuilding, Inc."

[2]On November 10, 2010, the Court entered a text order granting Haynes a final opportunity to file a response in opposition to NGSB's Motion.

First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11) individuals and the Ingalls Workers for Justice as Plaintiffs.  Haynes was not a named Plaintiff in the original suit.[3]  Named Defendants were Ingalls Shipbuilding Company, Litton Industries, and Northrop Grumman.  As detailed in its Memorandum Opinion [16] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VII claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  A Second Amended Complaint [48] was filed on April 7, 2003.  Subsequently, NGSB's Motion to Sever was granted by Order entered August 17, 2006 [360], which required Plaintiffs to file separate complaints.  Following severance of his claims, Haynes filed his present Complaint [362] on September 29, 2006.

---

[3]Haynes is not listed as one of one hundred forty-three [143] individuals who comprised the Ingalls Workers for Justice and who filed a charge with the Equal Employment Opportunity Commission on January 28, 2000.  EEOC Charge [461-3]. However, under the "single filing rule," an individual who has not filed an administrative charge can opt in to a suit filed by a similarly situated plaintiff under certain conditions.  *See, e.g., Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 599 (5th Cir. 2006).  NGSB does not contest Haynes' exhaustion of his administrative remedies before bringing suit.  Thus, the Court will assume that Haynes was allowed to piggyback on the other plaintiffs' EEOC charge, without deciding whether the single filing rule applies in this case.

In 2008, the Court entered an Order administratively closing all NGSB cases while the claims of all but fourteen [14] NGSB plaintiffs were heard and resolved through arbitration.  Haynes was one [1] of the fourteen [14] who opted out of the arbitration proceedings.  Upon conclusion of the various arbitrations, on June 16, 2010, the above captioned cause was reopened.  Following a status conference held on August 23, 2010, the Court determined that all discovery had been completed, and set this case for trial to commence on the Court's April 2011 trial calendar.

B.    Factual Background

Almetis Haynes was hired by Ingalls Shipbuilding, Inc. [now NGSB], in 1965. Occupation and Rate Record, attached as Ex. "A" to Def.'s Mot. for Summ. J.; March 30, 2006, Dep. of Almetis Haynes, at p. 24, attached as Ex. "G" to Def.'s Mot. for Summ. J.  Within five years of his initial employment, Haynes was promoted to the position of supervisor.  March 30, 2006, Dep. of Almetis Haynes, at p. 31, attached as Ex. "G" to Def.'s Mot. for Summ. J.  Plaintiff received various promotions throughout his tenure at the shipyard, along with accompanying pay raises.  *Id.* at p. 38.  For most of his career, Plaintiff worked in management positions. Occupation and Rate Record, attached as Ex. "A" to Def.'s Mot. for Summ. J.; March 30, 2006, Dep. of Almetis Haynes, at pp. 88-89, attached as Ex. "G" to Def.'s Mot. for Summ. J.  (during his 37 years of employment at the shipyard, he was in management for 32 years).  He retired from the company in January 2002. Personnel Status Report, attached as Ex. "B" to Def.'s Mot. for Summ. J.; *see* March 30, 2006, Dep. of Almetis Haynes, at p. 48, attached as Ex. "G" to Def.'s Mot. for

Summ. J.

In his Complaint, Haynes seeks injunctive and declaratory relief to prevent alleged systemic and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  Pl.'s Compl., ¶ ¶ 17-19.[4]  Haynes alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment.  *Id.,* ¶¶ 26-33.  In addition to injunctive and declaratory relief, Haynes seeks compensatory and punitive damages.  *Id.,* ¶ 1.   In its present Motion, NGSB moves the Court to grant summary judgment on all claims asserted in Haynes' Complaint.

## II. DISCUSSION

### A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[4] Though not addressed by NGSB in its Motion, and not necessary for the Court to decide in light of its decision to grant NGSB's Motion, the Court notes that Haynes' request for equitable relief is likely inappropriate in this case.  *See Gordon v. JKP Enters.,* Inc., 35 F. App'x 386, 2002 WL 753746, *6-*7 (5th Cir. 2002) (holding that injunctive relief under either Title VII or section 1981 was not appropriate as the plaintiffs were no longer employed).  Haynes retired from NGSB in January 2002.  Personnel Status Report, attached as Ex. "B" to Def.'s Mot. for Summ. J.; *see* March 30, 2006, Dep. of Almetis Haynes, at p. 48, attached as Ex. "G" to Def.'s Mot. for Summ. J.  There is no indication that Haynes seeks reinstatement, plans to seek employment with NGSB in the future, or would otherwise benefit from an injunction, likely rendering these particular claims moot.  *See Gordon,* 2002 WL 753746, at *6-*7.

that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *Id.* With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (quoting *Topalian v.*

-5-

*Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.  <u>Haynes' Claims</u>

Haynes' racial discrimination claims fall into four categories: (1) denial of

promotions, and demotions; (2) "racial job tracking"; (3) disparate wages; and (4)

hostile work environment.  The Court will analyze each in turn.

1.  <u>Failure to Promote</u>

Haynes, an African-American, specifically charges that he has applied for

certain promotive positions, and although qualified, he was not selected because of

his race.  Pl.'s Compl., ¶¶ 21-22, at pp. 6-7.  He claims that Caucasian employees

with less training and experience at NGSB routinely received promotions.  Pl.'s

Compl., ¶¶ 21-23, at p. 6.  Plaintiff identifies the following instances in which he

was allegedly not promoted based upon his race:

> a) In or around 1981, plaintiff was not promoted to Superintendent, a
> position for which plaintiff was qualified and for which Director Charlie
> Odom had previously informed him he would be selected.  Plaintiff was
> not selected because of his race.  Although plaintiff was informed that he
> would not be promoted, he learned that a document in his personnel file
> indicates that he was promoted to this position on or around July 29,
> 1981.
> b) In or around the summer of 2000, plaintiff was not selected for the
> position of Team Leader, a position for which he was qualified, but was
> not selected because of his race.

Pl.'s Compl., at ¶ 23.

Plaintiff lists the following instances of alleged demotion in support of his

claim:

> a) On or about November 11, 1982, plaintiff was demoted from the
> position of Foreman to Supervisor, allegedly due to a reduction in
> workforce.  The only two Black Foremen in plaintiff's department were

demoted at that time.

b) Plaintiff was discriminatorily demoted in or around 1991. After complaining to a White General Superintendent about an unjustified, negative performance evaluation plaintiff was given by this General Superintendent, plaintiff was demoted from Foreman to Supervisor.

Pl.'s Compl., at ¶ 23.

NGSB contends that all of Haynes' promotion claims are time barred, except for his claim regarding an alleged denial of promotion to Team Leader in 2000. Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at pp. 2-3. NGSB argues that summary judgment is nevertheless appropriate as to this remaining promotion claim from 2000. *Id.* at pp. 3-8.

### a.  Applicable Statutes of Limitations

Haynes' claims are brought under 42 U.S.C. § 2000 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). "Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs and this period begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Miss. State University*, 218 F.3d 365, 371 (5th Cir. 2000); *see* 42 U.S.C. § 2000e-5(e)(1). Although the timely filing of a charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court, it is a requirement that is similar to the statute of limitations, and is therefore subject to the doctrines of waiver, estoppel, and equitable tolling. *Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983). Thus, a plaintiff cannot sustain a claim under Title VII for events which occurred more than 180 days before the filing of

the charge of discrimination, absent a showing of waiver, estoppel, and/or equitable tolling. *Id.*

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified. Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). In *Morgan*, the United States Supreme Court determined that application of the continuing violation theory to these types of claims depends upon the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not apply to Title VII claims alleging discrete discriminatory acts arising outside the applicable statutory time period. Therefore, in order to timely file suit under Title VII, the charge must be filed within 180 days of the alleged discrete discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The time limitations period prescribed in Title VII commences with the date of "the alleged unlawful employment practice." 42 U.S.C.

§ 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 505

(1980)(holding that the present day effects of past discrimination are not actionable

under Title VII); *Huckaby v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)("a one time

employment event . . .' is the sort of discrete and salient event that should put the

employee on notice that a cause of action has accrued.'").

The EEOC charge which led to this litigation was filed on January 14, 2000.

Charge of Discrimination, attached as Ex. "C" to Def.'s Mot. for Summ. J.

Therefore, Haynes cannot recover under Title VII for any alleged discrete

discriminatory acts, including failures to promote or demotions, occurring more

than 180 days before the charge was filed, or before July 18, 1999.  *See Cruce*, 703

F.2d at 863.

42 U.S.C. § 1981, enacted in 1866, modified in 1870, and amended by the

Civil Rights Act of 1991, does not contain a statute of limitations.  Claims which

assert violations of 42 U.S.C. § 1981 are governed by the same standards applicable

to claims asserted under Title VII, with the exception that section 1981 claims do

not require exhaustion of remedies.  *Walker v. Thompson,* 214 F.3d 615, 625 (5th

Cir. 2000); *Wilkes v. Fedex Ground Package Sys.,* 359 F. Supp. 2d 539, 541 (S.D.

Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F. Supp. 2d 747, 754  n.7 (S.D.

Miss. 1999).  The Supreme Court has determined that certain claims brought

pursuant to section 1981 are subject to the federal four year catch-all statute of

limitations set forth in 28 U.S.C. § 1658.

> [A] cause of action arising under an Act of Congress enacted after
> December 1, 1990 . . . is governed by § 1658's 4-year statute of

limitations-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. That construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time protecting settled interests. It spares federal judges and litigants the need to identify the appropriate state statute of limitations to apply to new claims but leaves in place the "borrowed" limitations periods for pre-existing causes of action, . . .

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

With respect to Haynes' failure to promote or demotion claims brought pursuant to section 1981, the Court will apply the four-year statute of limitations.[5] The original Complaint in this action was filed on March 21, 2001.  Plaintiff cannot recover under section 1981 for any promotion denials or demotions occurring before March 21, 1997.

––––––––––––––––––

[5] *Jones* applied the four year federal, catch-all statute of limitations of 28 U.S.C. § 1658 to causes of action that arise under an Act of Congress enacted after December 1, 1990.  *Jones*, 541 U.S. at 382.  In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)*,* which was overturned by the Civil Rights Act of 1991, the Supreme Court held that whether a promotion claim was actionable under section 1981 pre-1990 depended on whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer, where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer.  If so, the Court held that the employer's refusal to enter into the new contract was actionable under the former version of section 1981.  *Patterson*, 491 U.S. at 186.  NGSB argues that, under *Jones* and *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002), the most analogous Mississippi statute of limitations would apply, which would be three years. However, the Court is of the view that, under the facts presented, it is not clear whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with NGSB, such that Haynes' claim arises under an Act of Congress enacted after December 1, 1990, and the four year limitations period would apply.  *Jones*, 541 U.S. at 382; *Patterson*, 491 U.S. at 186. However, applying either the four year federal catch-all or the three year Mississippi statute of limitations to the facts of this case would not change the outcome.

Based on Plaintiff's allegations of failures to promote and demotions contained in his Complaint, all of his claims under Title VII and section 1981 are time barred, except his allegation related to not being selected for the position of Team Leader in or around the summer of 2000.  Pl.'s Compl., at ¶ 23.

### b.   Failure to Promote in 2000

In order to establish a *prima facie* case of discrimination for failure to promote under either Title VII or section 1981, Haynes must establish each of the following four elements: 1) that he is within a protected class; 2) that he was qualified for the position sought; 3) that he was not promoted; and 4) that the position was filled by someone outside the protected class.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001) (*citing Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)); *see Thomas v. Staple Cotton Discount Corp.*, 182 F. App'x 337, 338, 2006 WL 1490051, *1 (5th Cir. 2006) (stating that Title VII and section 1981 require the same proof on a racial discrimination claim for failure to promote).

There is no dispute in this case that Haynes is a member of a protected class, and that he was rejected for the position sought.  NGSB also does not dispute that Haynes "met the basic, objective job requirements" for a Team Leader position.  Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 5.  However, NGSB maintains that Haynes has not shown that he was qualified for any particular Team Leader position.  *Id.* at p. 6.  NGSB argues that the cited qualifications were minimum qualifications possessed by many employees, and the Team Leader positions were

filled with the most qualified applicants through a particular selection process, preferring those with experience dealing with more than one craft, which Haynes did not have.  *Id.* at 4; Decl. of Don Bosley, attached as Ex. "D" to Def.' Mot. for Summ. J.

Also, NGSB argues that Haynes' claim fails "because he does not know the qualifications or identity of the employee who received the position for which he applied."  Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 6.  Nor does he know the race of the recipient.  *Id.*  Haynes testified that although he thought that the person who received the position was a white male, he would really be guessing and admitted that he did not know.  March 30, 2006, Dep. of Almetis Haynes, at pp. 49, 60, attached as Ex. "G" to Def.'s Mot. for Summ. J.  Haynes never talked to anyone at human resources about not getting the position.  July 27, 2007, Dep. of Almetis Haynes, at p. 102, attached as Ex. "H" to Def.'s Mot. for Summ. J.  The Court agrees that Haynes has failed to establish a *prima facie* case of discrimination for failure to promote.  *See Oden*, 246 F.3d at 468.

Even if Haynes had demonstrated the required elements of this claim, NGSB has proffered legitimate, nondiscriminatory reasons for its failure to hire Haynes in any of its Team Leader positions.  *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 317 (5th Cir. 2004); Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at pp. 6-7.  In order to survive NGSB's Motion for Summary Judgment, Haynes would be required to present evidence indicating that the reasons articulated for the company's failure to promote him were ostensibly a pretext for racial

discrimination.  *Davis*, 383 F.3d at 317.

To show that NGSB's proffered reasons for failing to promote him were a pretext for racial discrimination, Haynes has two methods available to him: (1) Haynes could show that NGSB's proffered explanation is false or "unworthy of credence"; or (2) Haynes could try to prove that he is "clearly better qualified" than the person selected for the position.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (*citing Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir. 2001)).  Haynes has done neither.  NGSB is entitled to judgment as a matter of law on this claim, inasmuch as there are no existing questions of material fact.

      2.    <u>Racial Job Tracking</u>

Haynes further contends that he was subjected to "racial job tracking" by being assigned jobs which were more difficult, dirtier, and/or more dangerous than those of white employees.  Compl. ¶ 25.  He alleges that

> from approximately 1965 to approximately 1974, plaintiff was assigned to dirtier, more difficult, dangerous, and less desirable jobs than his White coworkers, including jobs that required working in extremely confined spaces such as tanks and innerbottoms, or at extreme heights.

*Id*.

"Adverse employment actions have been held to include ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating.  They have been held inapplicable to minor management decisions such as negative reference giving."  *Thompson v. Sanderson Farms, Inc.*, 2006 WL

-13-

2711497, *8 (S.D. Miss.  Sept. 21, 2006).  As discussed above, even the most liberal

interpretation of both Title VII's and section 1981's statutes of limitations would not

save this claim.  Haynes' allegations of "racial job tracking" are clearly time barred.

Moreover, Haynes has submitted no competent summary judgment evidence in

support of this claim.  Based upon the record before the Court and the lack of

competent summary judgment evidence to support Haynes' positions, NGSB is

entitled to summary judgment on this claim.

     3.    <u>Disparate Wage Claim</u>

     Haynes further asserts that he "is informed and believes that he received less

compensation than similarly situated White co-workers for doing the same job."

Compl., at ¶ 23.  Haynes' Complaint states that he "became aware of the

discrepancy based on statements made by similarly situated White supervisory

personnel during the 1980s and 1990s."  *Id.*  Assuming for the sake of argument

that any of Haynes' disparate wage claims under Title VII and/or section 1981 could

survive the applicable statutes of limitations, summary judgment is nevertheless

appropriate on this claim.

     Because Haynes has presented no direct or express evidence of unlawful

discrimination, his claim is analyzed using the familiar *McDonnell Douglas*

framework.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

Under this framework, Haynes must first create a presumption of intentional

discrimination by establishing a *prima facie* case.  *Id.*  If established, the burden

then shifts to NGSB to articulate a legitimate, nondiscriminatory reason for its

actions.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Id.* (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  If the employer sustains its burden, the burden shifts back to Haynes to establish either: (1) that NGSB's proffered reason is not true but is instead a pretext for discrimination; or (2) that NGSB's reason, while true, is not the only reason for its conduct, and another "motivating factor" is Haynes' race.  *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

To establish a *prima facie* claim of discrimination with respect to compensation, Haynes must "show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility."  *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).  Haynes presents no evidence that he was paid differently from white workers.  When asked whether he had not received any pay raises since 1990 due to his race, Haynes testified that he really did not know.  March 30, 2006, Dep. of Almetis Haynes, at p. 61, attached as Ex. "G" to Def.'s Mot. for Summ. J.  When asked whether between 1990 and his retirement he believed that he was paid less than white employees who held the same positions, Haynes testified that it was a possibility, but he just did not know.  *Id.* at p. 81.  He was not aware of any facts which would suggest that he was paid less than white employees who held the same positions he did during the relevant time period.  *Id.* at pp. 81-82.

Although Haynes testified that he believed that he was paid less than many

white employees at the shipyard doing the same job as him,  July 27, 2007, Dep. of

Almetis Haynes, at p. 92, attached as Ex. "H" to Def.'s Mot. for Summ. J., he

described the basis of this belief as follows:

> Q:  Okay.  What is that belief based on?
> A:  Everybody got the little check in the envelope.  Nobody knows what nobody's making.  You can't prove it.
> Q:  Did you ever talk to anybody about your paycheck?
> A:  No.
> Q:  Well, why didn't you?
> A:  Well, what you gonna talk about.  How you gonna address it. What you gonna say.  I couldn't ask nobody, you know.  I'm just thinking that way.  I couldn't prove that.  Because everybody gets a check in a little envelope.  Occasionally you might hear a conversation, and somebody might slip and say, you know, how much I'm making or something like that.  But nobody will tell you that.  That was confidential.  Nobody told that.
> Q:  Do you recall any of those conversations?
> A:  No, I don't.
> Q:  Okay.
> A:  It was strictly confidential on those checks.
> Q:  So if you couldn't see in the checks, I mean, if you couldn't see the checks, was your belief based on anything except for just –
> A:  Just a gut feeling.

*Id.* at pp. 92-93.

Haynes never complained about this perceived difference in compensation.  *Id.* at p.

94.  The record is clear that Haynes' belief that his pay was less was totally

subjective.

Haynes' subjective belief that he was discriminated against is not enough to

avoid summary judgment.  *Watts v. Energy Operations, Inc.*, 247 F.3d 241, 2001 WL

43541, *2 (5th Cir. 2001) (*citing Grimes v. Texas Dept. of Mental Health*, 102 F.3d

137, 140 (5th Cir. 1996)).  Haynes has presented insufficient evidence of his wages

and the wages of other employees whose responsibilities were the same as his.  The

record simply does not support Haynes' disparate wage claim.  Because Haynes has

not demonstrated with particularity the identity of any similarly situated

non-minority employees who were paid higher wages, he has failed to establish a

*prima facie* case on his disparate wages claim.  Summary judgment is appropriate.

*See Gray v. Entergy Operation, Inc.,* 240 F.3d 1074, 2000 WL 1835299, *3-*4 (5th

Cir. Nov. 29, 2000).

    4.  <u>Hostile Work Environment Claim</u>

    Haynes contends that throughout his employment at NGSB, he was

subjected to racial hostilities and intimidation.   Specifically, Haynes alleges that:

> he has been exposed to offensive racially derogatory writings, depictions,
> and/or graffiti on a constant basis in a number of places at [NGSB].

Pl.'s Compl. ¶ 26, p. 8.

Haynes also maintains that he has been exposed to racial epithets and observed

nooses in the shipyard, and that NGSB knew of these occurrences but failed to

promptly prevent or correct them.  Pl.'s Compl. ¶¶ 26-28, pp. 8-10.

    NGSB moves for summary judgment on Haynes' hostile work environment

claim.  It contends that the only alleged conduct which occurred within the relevant

time frame for statute of limitations purposes was graffiti, and that Haynes fails to

describe the graffiti he allegedly saw during this period.  Def.'s Mem. Br. in Support

of Mot. for Summ. J. at p. 10.  NGSB also argues that Haynes was not subjected to

severe or pervasive harassment, and that "racially offensive graffiti alone is

insufficient to support a hostile work environment claim."  *Id.* at p. 11 (citations

omitted).  NGSB further asserts that Haynes' own testimony and conduct

"demonstrate that he did not view his environment as subjectively hostile and that he suffered no harm from seeing the alleged graffiti." *Id.*  Additionally, NGSB maintains the alleged conduct did not affect a term or condition of Haynes' employment.  *Id.* at p. 13.  Finally, NGSB argues that "Haynes never sought any treatment for the alleged emotional distress caused by the graffiti," and that Haynes' "conclusory, self-serving testimony that he has suffered from emotional distress is simply not enough."  *Id.*

> a.  <u>Applicable Statutes of Limitations</u>

As the Court has discussed in detail above, Haynes cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can he recover under section 1981 for any acts occurring prior to March 21, 1997.  If Haynes' allegations of hostile work environment were viewed as discrete acts, then NGSB would be correct in focusing its analysis only on those alleged acts which occurred within the relevant time frame, namely any graffiti from 1997 until Haynes' retirement.  However, in *Morgan*, the Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts.").  NGSB has not addressed the continuing violation theory in its Motion and Brief.  Nor has Haynes provided the Court with the benefit of a

response to NGSB's Motion.  However, because Hayes has raised the continuing

violation doctrine in his Complaint, Pl.'s Compl. ¶ 32, p. 11, the Court will address

it.

The Fifth Circuit has stated that the continuing violation doctrine "has been

endorsed for use by [it] under limited circumstances."  *Celestine v. Petroleos de*

*Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001). The Court has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show
> that the harassment within the limitations period and the harassment
> outside the limitations period constituted "a series of related acts" and
> that "an organized scheme led to and included the present violation." *See*
> *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004); *Felton v.*
> *Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (*citing Celestine v. Petroleos de*
> *Venezuella SA*, 266 F.3d 343, 352 (5th Cir.2001)).  This court has looked
> to at least three factors in determining whether acts are sufficiently
> related to constitute a continuing violation: (1) whether the alleged acts
> involve the same type of discrimination, tending to connect them in a
> continuing violation; (2) whether the acts are in the nature of recurring
> events, or are more in the nature of isolated events; and (3) whether the
> act or acts have the degree of permanence that should alert an employee
> to assert his rights.  *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.
> 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2
(5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile

work environment cases, and the burden remains on the employee to demonstrate

an organized scheme led to and included the present violation." *Celestine*, 266 F.3d

at 352.  Haynes has not demonstrated the applicability of the continuing violation

theory here, and the Court is not persuaded that it should be applied based upon

the facts of this case.  Moreover, "where a pattern of harassment spreads out over

years, and it is evident long before the plaintiff sues that [he] was a victim of

actionable harassment, [he] can not reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Id.* (*quoting Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir. 1999)).  The Court will not apply the continuing violation doctrine to Haynes' hostile work environment claim.

   b. *Prima Facie* Case

   Without a continuing violation, the record is clear that Haynes' hostile work environment claim consists only of his allegations regarding graffiti from 1997 until his retirement in 2001.  To establish a *prima facie* case of a hostile work environment, Haynes must show that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *Ellis v. Principi,* 246 F. App'x 867, 2007 WL 2510620, *3 (5th Cir. 2007)(*citing Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996)(Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999). Thus, not only must Haynes have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive. *Harris,* 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 23. No single factor is determinative. *Id.*

Haynes asserted in his depositions that he was exposed to racially derogatory writings, depictions, and graffiti on numerous occasions during his tenure at NGSB. Haynes testified that he observed these in the NGSB bathrooms and on ship bulkheads for years, up until his retirement. March 30, 2006, Dep. of Almetis Haynes, at pp. 62-63, attached as Ex. "G" to Def.'s Mot. for Summ. J. Haynes testified as follows:

> Q. Some of the plaintiffs in this lawsuit say that they have seen graffiti in the bathrooms at the shipyard while they have been

-21-

employed there which was racially offensive to them.
Have you seen any graffiti in the bathrooms of the shipyards which you found to be racially offensive?

A.      Yes, not only in the bathrooms.  I've seen it on ship bulkheads, too, as well.  Yes, definitely have.  And that was there when I left.  That's from day one.  When I first went there, see.  They had separate bathrooms, black and white bathrooms.  But after they integrated, ever since then, there has been graffiti for years.  When I retired, it was the same thing, still in the bathroom.

Q.      What type of graffiti was in the bathrooms that you recall?

A.      From KKK to nigger this, nigger that.  You name it.  Everything you could name was in there.  I mean, the walls would just be clustered with it.  I think that some people just go over there and sit all day and just write that stuff.  I mean, it's all – man, it's unbelievable.

*Id.* at pp. 62-63.

Haynes testified that there was also graffiti about homosexuals and women on the walls, but most was "aimed at the blacks . . . ."  *Id.* at pp. 63-64.  Haynes stated that the racially offensive graffiti was most prevalent in the shipyard around the 1970s and 1980s, but that there was a flare up of graffiti in the early 1990s as well.  *Id.* at pp. 64-66.  According to Haynes, NGSB would go in and paint the bathroom stalls, but in a week's time, the graffiti would return.  *Id.* at p. 65.  Haynes never complained to anyone at the organization about the graffiti.  *Id.* at p. 67.

Applying the *Harris* factors to this case, Haynes has not shown the frequency or severity of any racially offensive graffiti after March 21, 1997.  While the referenced graffiti allegedly contained offensive utterances, Haynes has not demonstrated that any of the graffiti during the relevant time period was physically threatening or humiliating.  He acknowledged that the working climate "never

stopped [him] from meeting [his] expectations, as far as . . . increments of work that

[he] was assigned."  March 30, 2006, Dep. of Almetis Haynes, at p. 34, attached as

Ex. "G" to Def.'s Mot. for Summ. J.  However, Haynes stated that he felt "like if

perhaps if we'd have better working climate, you know, and more conducive to

work, [he] would have exceeded [his] expectations."  *Id.*  Haynes further testified

that he did not recall any incidents of harassing behavior during the relevant time

period.

> Q.   Since 1990, until the time of your retirement, were you involved in
>      any incidents at the shipyard in which you believe you were
>      subjected to any type of harassing behavior that was based upon
>      your race.
>
>                          *   *   *
>
> A.   I don't recall.
> Q.   When you say you don't recall, is it possible that you were
>      subjected to acts of racial harassment but that you just don't
>      remember it today, or are you saying that you were not subjected
>      to acts of racial harassment from 1990 until the time you retired?
>
>                          *   *   *
>
> A.   It's possible, but I don't recall.  It's possible.  I don't recall.

*Id.*, at pp. 71-72.

Based upon the totality of the circumstances, the competent summary

judgment evidence does not create a material fact question precluding summary

judgment on Haynes' hostile work environment claim within the limitations period.

Haynes, in failing to respond to the instant Motion, has not tendered any additional

evidence in support of his contentions which tends to establish that any of these

incidents interfered with his work performance.  The Court is of the opinion that,

based upon the evidence submitted and the present record, no questions of material

fact exist which preclude summary judgment on this claim.  Therefore, NGSB's

Motion should be granted.

### III. <u>CONCLUSION</u>

The Court concludes that Haynes has not met his burden of demonstrating that his failure to promote, racial job tracking, disparate wage, and hostile working environment claims can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons more fully cited herein, the Motion of Defendant, Northrop Grumman Shipbuilding, Inc., filed October 15, 2010 [461], for Summary Judgment, should be and hereby is **GRANTED,** and Haynes' claims against Defendant should be dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 28th day of March, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE